FRIEDA E. J. FARLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELMER A. FARLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8961, 8962. Promulgated June 20, 1946.

*John F. Hartmann, C. P. A.*, and *Louis H. Yarrut, Esq.*, for the petitioners.

*Frank B. Schlosser, Esq.*, for the respondent.

**OPINION.**

HILL, *Judge* : The question presented is whether the profit realized on the sales of the Gentilly lots is taxable as capital or ordinary gain.

Respondent argues that the property involved is excepted from the general definition of capital assets because "held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business," within the meaning of section 117 (a) (1) of the Internal Revenue Code.[1] Petitioner argues that the property was not so held, because he was not engaged in the trade or business of selling real estate.

Respondent contends primarily that the sales involved were so frequent and continuous as to constitute such activity a trade or business. It is unquestionably true that the frequency and continuity with which a particular activity is carried on is a primary consideration in determining whether such activity constitutes a trade or business. It is significant to note, however, that the cases which have applied this test to real estate transactions involved elements of development and substantial sales activity which are essentially lacking in the instant case. See *Richards* v. *Commissioner*, 81 Fed. (2d) 369; *Snell* v. *Commissioner*, 97 Fed. (2d) 891; *Welch* v. *Solomon*, 99 Fed. (2d) 41; *Ehrman* v. *Commissioner*, 120 Fed. (2d) 607; *Oliver* v. *Commissioner*, 138 Fed. (2d) 910; *Gruver* v. *Commissioner*, 142 Fed. (2d) 363; *Brown* v. *Commissioner*, 143 Fed. (2d) 468; *James Lewis Caldwell McFadden*, 2 T. C. 395. In none of these cases did the taxpayer maintain the passive posture held by petitioner in the instant case.

Not only are there absent here the elements of development and sales activities which distinguish the instant case from those cited above, but there are also other circumstances which, in our opinion, explain the frequency and continuity of sales here involved in terms other than those connotating business activity. In the first place, it should be borne in mind that the Gentilly Squares were subdivided and platted prior to the time petitioner acquired them. In the second place, the method of selling the property in lots, we think, was determined by the purchasers rather than by petitioner. Although taking no active steps to sell the property, petitioner was approached by individual purchasers seeking small residential lots. These unsolicited approaches were what lent the element of frequency and continuity to the sales. Petitioner might have eliminated the frequency and continuity of the sales by selling the entire tract in one piece. It is not improbable, however, that to interest an individual or group of individuals in a

---

[1] SEC. 117, CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or *property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business,* or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1)  *  *  *.  [Emphasis supplied.]

purchase of such magnitude would have required more elements of business activity than did petitioner's acceptance of individual offers as they occurred from time to time. Under these circumstances, it appears to us that the frequent and continuous character of the sales resulted notwithstanding petitioner's passivity rather than from any business activity on his part. As already suggested, petitioner could have eliminated the frequent and continuous character of sales by selling the property in one tract. However, such procedure would have undoubtedly involved many practical disadvantages. The property was covered with nursery stock. Had the property been sold in one tract, with reasonably prompt occupancy expected, petitioner would have been faced with the problem of removing large quantities of nursery stock to enable such occupancy. The large scale removal of such nursery stock would have posed petitioner the problem of obtaining labor, which was in short supply, and of finding a way to dispose of such stock. In view of the absence of the elements of development and sales activity and the impracticability of disposing of the property in one tract, we are not inclined to think that the frequency and continuity test as applied to these circumstances would constitute in and of itself a satisfactory criterion of business activity.

We are impressed on the other hand by what we consider the almost complete absence of any development or sales activity in the instant case. The only improvements on the property which had any relation to the desirability of the property for residential purposes were the streets that were constructed and paid for by the city of New Orleans. Petitioner did not desire these improvements and was not instrumental in any way in obtaining their construction. Petitioner did contribute certain materials required to build sidewalks and curbing. However, the expense to petitioner was relatively insignificant in amount and such practice of furnishing such material was customary in the city of New Orleans. With this exception petitioner was not responsible directly or indirectly for any improvements on the property which might be considered as facilitating its sale for residential purposes. Nor did petitioner engage in any activities whatsoever to promote sales. He did no advertising, hired no agents, did not list the property, and erected no signs. Petitioner, in our opinion, merely accepted satisfactory offers from unsolicited purchasers. It would seem that petitioner could have maintained a more passive role only by refusing to sell at all.

We are further impressed by the fact that the sales in question appear to have been essentially in the nature of a gradual and passive liquidation of an asset. We appreciate that the so-called liquidation test has been rejected in certain cases wherein the manner of conducting the alleged liquidation was such as to constitute a trade or business. See

*Richards* v. *Commissioner, supra; Commissioner* v. *Boeing,* 106 Fed. (2d) 305; *Ehrman* v. *Commissioner, supra.* It is undoubtedly true that where the liquidation of an asset is accompanied by extensive development and sales activity, the mere fact of liquidation will not be considered as precluding the existence of a trade or business. Where, however, the active elements of development and sales activities are absent, the fact of liquidation is not, in our opinion, to be disregarded. The liquidation factor has been given consideration and weight in such cases as *United States* v. *Robinson,* 129 Fed. (2d) 297; *Fuld* v. *Commissioner,* 139 Fed. (2d) 465; *Harriss* v. *Commissioner,* 143 Fed. (2d) 279.

In considering whether or not the circumstances of the instant case involve a trade or business, we have borne in mind the dominant purpose of the capital gain provisions of the Internal Revenue Code. The purpose of these provisions has been stated by the Supreme Court in *Burnet* v. *Harmel,* 287 U. S. 103, as follows:

Before the act of 1921, gains realized from the sale of property were taxed at the same rates as other income, with the result that capital gains, often accruing over long periods of time, were taxed in the year of realization at the high rates resulting from their inclusion in the higher surtax brackets. The provisions of the 1921 Revenue Act for taxing capital gains at a lower rate, reenacted in 1924 without material change, were adopted to relieve the taxpayer from these excessive tax burdens on gains resulting from a conversion of capital investments, and to remove the deterrent effect of those burdens on such conversions. House Report No. 350, Ways and Means Committee, 67th Cong., 1st Sess. on the Revenue Bill of 1921, p. 10; see *Alexander* v. *King,* (CCA) 46 F. (2d) 235.

We think the instant situation is one which the capital gain provisions are intended to cover. The profit realized from the sales of the Gentilly lots represented, in our opinion, an appreciation in the value of such property which had gradually accrued during the years of petitioner's ownership. This appreciation in value was the result of changing conditions over which petitioner had no control. The same conditions, while increasing the property's value for residential purposes, diminished its value as an asset in petitioner's nursery business. Restrictive covenants running with the land prevented petitioner from erecting fences to protect his nursery from the encroachment of the city's growth. Under these circumstances petitioner sold when satisfactory offers were made. It is difficult for us to imagine how petitioner could have converted this nursery business asset with any less elements of business activity than he did. To hold that petitioner, under the circumstances of this case, became engaged in the trade or business of selling real estate, it seems to us, would be unnecessary distortion of the facts and an avoidance of the purposes of the capital gain provisions of the statute. Our conclusion in the instant case is supported by the reasoning of such cases as *Phipps* v. *Commissioner,* 54 Fed. (2d) 469; *Croker* v. *Helvering,* 91 Fed. (2d) 299; *Burk-*

*hard Investment Co.* v. *United States*, 100 Fed. (2d) 642; *United States* v. *Robinson*, *supra*; *Fuld* v. *Commissioner*, *supra*; *Harriss* v. *Commissioner*, *supra*; *Sparks* v. *United States*, 55 Fed. Supp. 941; and *Collin* v. *United States*, 57 Fed. Supp. 217. We hold that the amount of the profits from the sales in question, to wit, $14,816.37, is taxable on a community basis as capital gain rather than as ordinary income.

*Decisions will be entered under Rule 50.*