R. H. Hutchinson v. Commissioner. R. H. Hutchinson, Independent Executor of the Estate of Grace G. Hutchinson, Deceased v. Commissioner.
R. H. Hutchinson v. Commissioner
Docket Nos. 20118, 20119.
United States Tax Court
1949 Tax Ct. Memo LEXIS 147; 8 T.C.M. (CCH) 597; T.C.M. (RIA) 49155; June 22, 1949
*147 Held, that under the facts certain sales of lots from a subdivision known as the Sylvan Eagle subdivision near the City of Dallas, Texas, were of property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business and are taxable as ordinary income and not as capital gains. Held, further, that certain other sales from a tract known as Canal Street property near the City of Dallas, Texas, were not sales of property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business but were sales of capital assets owned and held for more than six months and the gains therefrom are taxable as capital gains and not as ordinary income. Iverson Walker, Esq., 1900 Mercantile Bank Bldg., Dallas, Texas, for the petitioners. Frost Walker, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion Each of these proceedings, which have been consolidated, involves deficiencies in income tax of $341.68 for 1944, $1,548.67 for 1945 and $1,704.83 for 1946. These deficiencies result from several adjustments made by the Commissioner to the returns filed by petitioners.none of these adjustments *148 are contested by petitioners except that which resulted from the Commissioner's determination that certain capital gains reported in each of the taxable years should have been reported as ordinary income. These adjustments are explained by the Commissioner in his deficiency notices, as follows: "(a) Gain on sale of lots in the Sylvan and Canal additions was considered a long-term capital gain in the return and, therefore only 50% was reported as taxable income. It is held that such gain is ordinary income, fully taxable. * * *" Petitioners by appropriate assignments of error contest this action of the Commissioner. Findings of Fact Petitioner R. H. Hutchinson is an individual, resident of Dallas, Texas. Grace G. Hutchinson, the wife of R. H. Hutchinson, died July 29, 1947, and petitioner Hutchinson, independent executor, is the duly qualified and acting independent executor of her estate. Hutchinson will sometimes hereafter be referred to as petitioner. During 1944, 1945 and 1946, R. H. Hutchinson and Grace G. Hutchinson made sales of real estate from which they realized the following community gains: Year
Amount of Gain
1944
$2,518.64
1945
8,743.52
1946
7,195.76
*149 All of these sales were from two tracts of land, one known as the Sylvan Eagle tract and the other as the Canal Street tract, each held for more than six months prior to 1944. Petitioner has been for the past 20 years engaged full time in a manufacturing business. He manufactures window and door guards and his business has been growing steadily since it was founded. He never did and does not now ordinarily buy, sell or deal in real estate. He has not held himself out to the public as a dealer in real estate and is not regarded in his business community as such. Other than the property in question he has not sold any real estate and has not acquired any real estate, except homesites for members of his family. He has no real estate office or license. The Sylvan Eagle tract is a small tract of approximately eight acres which petitioner acquired in a year prior to the taxable years involved here. It was intended at the time of acquisition that approximately onehalf of the tract would be used as a plant site for petitioner's factory and the balance taken by another purchaser or resold in bulk. The reason petitioner purchased the whole eight acres was because he had too buy it all in *150 order to get the four acres which he needed at an advantageous price. He first tried to sell the front four acres and could not do so and then he tried to sell the back four acres, because he only needed four acres for his factory site. Petitioner then decided to cut up the front one-half of the tract into lots and sell them and keep the back one-half of the eight-acre tract as a factory site. He found the public would not buy as long as they thought he was going to build his factory there. So he had to change his plans and abandon his idea of putting his factory on any part of this eightacre tract. He replatted it all and put a center street through it so as to demonstrate that he did not intend to put his factory there. The plat of this subdivision was designated as "Plat of SYLVANEAGLE an Addition to the City of Dallas, Texas" and shows this Sylvan Eagle addition was opened in 1941 and petitioner published the following advertisement in promotion of the sale of the lots: "The Last Good Sites on Eagle Ford Road SYLVAN EAGLE Addition Beautiful Lots for Sale on Easy Terms $15.00 Cash - $1.50 Weekly "Interest, taxes, assessments included in these low payments. Stewart's Guaranteed *151 Titles, PERFECT. This is all it takes to start your estate, if you buy now - PRICES ARE BOUND TO ADVANCE. TAG PULLING AND OPENING Sunday, April 20th, 1941 "A business lot worth $800.00 on Eagle Ford Road will be given FREE when all lots have been contracted for. Level Lots with Rich Soil, $300 to $350, 6,000 Square Feet, 5" a square foot, 46 X 134. LOCATION "On Eagle Ford Road, opposite Atlas Metal Works. ELECTRICITY Texas Power & Light available. GAS available. Extended with four users. WATER Fine, cool well water at 20 feet. Pump and well cost less than $10. No water bills. Irrigate a garden. SEWERAGE Septic tank, perfectly safe and sanitary. A six-foot strata of clay keeps surface water away from the filtering sands and gravel. "DOUBLE YOUR MONEY if you want an investment. Builders, you cannot beat the location for modest little homes. ON THE CITY BUS LINE, or just a hop and a jump to town. ANYONE CAN RAISE 20" A DAY - little more than car fare. "THIS IS YOUR OPPORTUNITY! * * *
"R. H. HUTCHINSON & CO." Later petitioner built six houses stretched along the lots so as to demonstrate clearly he was not going to put the factory there and he also solt *152 two church lots. This was to further convince the public that he had abandoned all notion of building his factory there. These houses which he constructed and later sold were small, about three rooms each but they were well built of good material. The houses, including lot, cost about $1,200 and were sold for $1,500 to $1,600 each. These sales were made for a small down payment with the balance payable in easy installments. The following summary gives the total number of lots sold and the number of sales made by petitioner during the years indicated with respect to the Sylvan Eagle subdivision: 1941
1942
1943
1944
1945
1946
1/2 lot
4 1/2 lots
19 1/2 lots
9 lots
2 lots
1 lot
1 sale
6 sales
16 sales
11 sales
3 sales
1 sale Sometimes petitioner sold one-half of a lot in the Sylvan Eagle subdivision. Canal Street Property When petitioner learned that he would not be able to build his factory on the Sylvan Eagle tract because of neighborhood objection, he acquired early in 1943 another eightacre tract known as the Canal Street tract. This tract has a levee ditch through it - about five acres are on one side of the ditch and three acres are *153 on the other side. The Canal Street tract was acquired as the manufacturing site for petitioner's factory and is now so used. It is, as stated, a small tract of approximately eight acres, of which approximately two-thirds is used or held for petitioner's plant site, the remaining onethird, without which the plant site could not have been advantageously acquired, is "cull" acreage subject to periodic overflows and has been sold to other industrial users, except three lots inaccessible for industrial use which have been sold for homes in the $200 to $300 range. After petitioner acquired it, the Canal Street tract was platted into 37 lots, 21 of which are reserved by petitioner for his own use. Limited improvements of dirt and gravel streets were put in primarily for the benefit of petitioner's own factory. The following summary gives the total number of lots sold and the number of sales made by petitioner during the years indicated with respect to the Canal Street tract: 1944
1945
1946
2 lots
1 lot
10 lots
1 sale
1 sale
5 sales
None of the aforesaid properties, either in the Sylvan Eagle subdivision or the Canal Street lots, have been listed with any real *154 estate agency. Petitioner's advertising was limited and was confined to the Sylvan Eagle subdivision. He did no advertising of any kind as to the Canal Street property. Most of the sales made resulted from prospective purchasers approaching petitioner. Whenever the approach was made through a real estate agent, the agent represented the purchaser and the commissions were paid by the purchaser. Opinion BLACK, Judge: In these proceedings there is but one issue to decide and that is whether the profits made from the sale by petitioner during the taxable years of certain lots and parcels of land resulted in capital gains as petitioners contend or were ordiary income as the Commissioner has determined and still contends. There is no dispute as to the profits which resulted from the sales. These sales were made from two properties, one known as the Sylvan Eagle property and the other as the Canal Street property. There were some differences in the handling, development and sales of these properties and we think it will be better to treat them separately. We will first discuss the sales from the Sylvan Eagle property. Petitioner strongly contends that his handling of this property was *155 as a passive investor liquidating his property and that the sum of his efforts in disposing of this property, which extended over a period of six years, does not add up to putting him into the real estate business nor establish that he was holding these lots "primarily for sale to customers in the ordinary course of his trade or business," as that phrase is used in section 117 (a) (1), I.R.C. That section is printed in the margin. [1]
Petitioner strongly relies on Fahs v. Crawford, 161 Fed. (2d) 315; *156 Boomhower v. United States, 74 Fed. Supp. 997 and Frieda E. J. Farley, 7 T.C. 198. In Fahs v. Crawford, supra, Crawford was a lawyer who had acquired the property there involved as an investor and not for resale in lots. During the years there involved he sold some of the property largely through the efforts of one, Commander, who was a building contractor. The taxable years in that case were 1940 and 1941 and as to those years the opinion of the court states some of the facts, as follows: "During 1940 and 1941, Commander purchased for himself, and built dwellings upon, 37 of the lots most of which he resold. Fifty-eight additional lots were sold through Commander to other building contractors, who were engaged in building homes for sale. They purchased the lots, erected a dwelling thereon, and resold the same to an ultimate purchaser. The owners of the land had no part in these building operations, nor in the resales, nor did they share in the profit or or loss therefrom. They merely received the net purchase price of the lotes themselves. The building operations were financed and carried on wholly by Commander and others who purchased lots *157 through him." On these facts the court held that Crawford's sales were of capital assets. In the Boomhower case, supra, Boomhower was an active lawyer and spent all of his time in the practice of his profession. A concern known as the Fullerton Lumber Co. was then engaged in the retail lumber business in Mason City, Iowa, and was desirous of stimulating the building of houses. The Fullerton Lumber Co. and a local contractor would furnish the materials for houses and the contractor would build them for sale. Boomhower built no houses. He merely platted the lands and did some street improvements and sold the lots as purchasers came in from the lumber company and the building contractors. The court, after analyzing many cases, held in favor of the taxpayer and that his activities in the sale of the lots were not sufficient to put him in the real estate business. In the instant case, we have a situation in so far as the Sylvan Eagle tract is concerned somewhat different from the facts in Fahs v. Crawford and Boomhower v. United States, both supra. Here petitioner, when he learned that he would not be able to build his factory on the Sylvan Eagle property and that he could not sell *158 it to an advantage as one tract, subdivided it into 38 lots and soon after constructed eight small houses himself on the property and sold those houses for a price of $1,500 to $1,600 each, and along as he sold these houses and lots he also marketed other lots. It is true that this operation did not put him extensively into the real estate business, but it is difficut to see how, in the face of these facts, we could hold that he was merely passively liquidating the property as in Fahs v. Crawford, Boomhower v. United States, and Frieda E. J. Farley, all supra. In this latter case the taxpayer, as in Fahs v. Crawford and Boomhower v. United States, built no houses on the property he was selling but merely liquidated in an orderly manner some nursery property which it was no longer practicable to use as a nursery. We pointed out that his sales activities were merely passive in character and we said: "* * * Nor did petitioner engage in any activities whatsoever to promote sales. He did no advertising, hired no agents, did not list the property, and erected no signs. Petitioner, in our opinion, merely accepted satisfactory offers from unsolicited purchasers. It would seem that petitioner *159 could have maintained a more passive role only by refusing to sell at all." For reasons which we have endeavored to point out above, we think we must hold that notwithstanding petitioner's original purpose in acquiring this tract was to use it as a factory site, that nevertheless his activities in disposing of the property after he learned that he could not use it as a factory site were such as to put him in the real estate business and bring him within the ambit of such cases as Richards v. Commissioner, 81 Fed. (2d) 369; Snell v. Commissioner, 97 Fed. (2d) 891; Ehrman v. Commissioner, 120 Fed. (2d) 607 and White v. Commissioner, 172 Fed. (2d) 629. In the latter case our decision in Frieda E. J. Farley, supra, was discussed and distinguished. The court spoke of our decision in the Farley case, as follows: "The gist of the court's holding in the Farley case, in which we concur, was that where the liquidation of an asset is accompanied by extensive development and sales activity, the mere fact of liquidation does not preclude the existence of a trade or business; but, where the elements of development and sales activity *160 are absent, the fact of liquidation may not be disregarded. * * *" While it is true, as petitioner points out in his brief, that his dealings in the Sylvan Eagle property did not add up to nearly as much business activity as in the Richards, Ehrman, Snell and White cases, nevertheless, we think they were extensive enough to bring him within the ambit of those cases, and we so hold. Now, as to the sales of the Canal Street property we think the situation is different and brings those sales within the ambit of Fahs v. Crawford, Boomhower v. United States and Frieda E. J. Farley, all supra. When petitioner definitely learned that he would not be able to use the Sylvan Eagle tract as a site for his factory, he acquired the Canal Street property He knew he did not need all of the eight-acre tract for his factory but had to acquire it all in order to purchase it at an advantageous price. He intended to sell off the excess along as he could for other factory sites. He has done that. We regard these sales as merely incidental. Petitioner has constructed his factory and three warehouses on this site. He has sold off the balance as factory sites along as buyers have come to him, without *161 any advertising or sales promotion of any kind. He sold three of the lots which were not suitable for factory sites to purchasers who have erected on them mere "shacks" as petitioner characterizes them in his testimony, costing from $200 to $300 each. We do not think petitioner's activities with respect to this Canal Street property add up to putting him into the real estate business and we do not think that the lots which he had sold from this tract during the taxable years were "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." See Fahs v. Crawford, Boomhower v. United States and Frieda E. J. Farley, all supra. We so hold. The gains from the sale of these lots should be treated as capital gain in a recomputation under Rule 50. Petitioner's income tax returns for each of the taxable years are in evidence and clearly show the different sales from the respective properties and the profits from these sales. As we have already stated, both parties are in agreement as to the amounts of these gains and we have, therefore, made no findings as to the gains from the sale of lots in the separate tracts. Decisions will be entered *162 under Rule 50. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), * * *↩