Claude M. Ferguson and Madeline D. Ferguson v. Commissioner.
Ferguson v. Commissioner
Docket No. 18161.
United States Tax Court
1950 Tax Ct. Memo LEXIS 244; 9 T.C.M. (CCH) 243; T.C.M. (RIA) 50071; March 21, 1950
*244 J. Benson Hoze, Esq., 1103 Cosby St., Lynchburg, Va., for the petitioners. Sanford M. Stoddard, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The respondent determined the following deficiencies in the income tax of petitioners: Year
Deficiency
1943
$ 638.65
1944
231.27
1945
3,581.35
1946
3,783.05
Because of the provisions of the Current Tax Payment Act of 1943, the year 1942 is also involved in this proceeding. Five issues were raised by the pleadings. At the hearing the petitioners conceded two issues relating to disallowance of depreciation taken on rental property and disallowance of deductions for automobile expense. They also conceded that the action of respondent in respect of the addition to income on account of unreported sales was correct if we find that they should report the gain from the sale of real estate as ordinary income in the taxable years, it being contended, however, that credit should in any event be given petitioners for amounts allegedly reported as gross rents in each of the taxable years. At the hearing respondent conceded that petitioners were entitled to depreciation *245 allowances for the respective taxable years in the following amounts: 1942, $1,386; 1943, $1,426; 1944, $1,426; 1945, $1,360, and 1946, $1,568. Effect will be given to the concessions of the respective parties on settlement under Rule 50. The remaining issues are: 1. Did the respondent err in denying long-term capital gain treatment to certain sales of real estate in the taxable years 1942 to 1946, inclusive? 2. Did the respondent err in increasing the net income as reported by petitioners on the ground that they failed to report in their 1945 and 1946 returns certain amounts received under contracts for the sale of real estate? Findings of Fact Petitioners, husband and wife, are residents of Lynchburg, Virginia, and filed their returns for the taxable years with the collector of internal revenue at Richmond, Virginia. Madeline D. Ferguson joined with her husband only in the execution of his 1945 return. The term "petitioner" when used hereinafter will have reference to Claude M. Ferguson. Petitioner was married and had five dependent children in all of the taxable years except the year 1946 when he had four dependent children. Petitioner, in his income tax returns *246 for the taxable years, described his occupation as follows, respectively: 1942
Real estate salesman
1943
Real estate
1944
Self
1945
Real estate
1946
Property owner
Petitioner began acquiring property in or near Lynchburg, Virginia, in the year 1936. The properties then and thereafter acquired consisted mostly of cheap dwelling units in the colored section of Lynchburg. These properties were acquired both in single units and in groups of units, and were disposed of in the same way. Petitioner's purpose in acquiring these properties was to rent them and profit from the rentals received. Real estate agents who also collected rents managed some of his rental property, and he managed the remainder of his rental property and all of his non-rental property. The income of colored people in Lynchburg increased during the war years and as a result there was a great demand for colored residential property and a scarcity. It was the policy of the petitioner to sell a rented property to an occupant who indicated a desire to purchase it for a home, if the property was not "bringing a big return." Sometimes the offer to purchase would be made to petitioner, and sometimes *247 it would be made to the rental agent who was collecting rents and the agent would transmit the offer to petitioner. Petitioner never listed his properties for sale with any real estate agencies, and he has never held a real estate agent or broker license. Prior to the taxable years petitioner purchased timber land, 225 acres in one tract and 134 acres in another. He sold the timber for mine props on pulp wood, and after the land was cleared, subdivided each of the tracts into lots, some of which were sold during the taxable years. In 1942 petitioner bought four pieces of residential property and sold five pieces of such property. He also sold a lot that he had purchased that year along with residential property. Three of the pieces of residential property and the lot purchased were sold in less than six months after purchase. Two of the pieces of residential property were purchased and sold in a joint venture with two Lynchburg real estate dealers. Petitioner's net gain from these sales, as computed by respondent, was $2,392.05. In 1943 petitioner purchased five separate pieces of residential property and sold four pieces of such property in addition to a lot from a rural subdivision *248 that he had subdivided after acquiring the land. Petitioner in this year also sold some timber land, and a half interest in the timber located thereon. [1] Petitioner's net gain from the sales, as computed by respondent, amounted to $6,239.42. In 1944 petitioner sold three pieces of residential property, one of which he acquired in May of that year and sold in July. Petitioner realized a net gain on these sales, as computed by respondent, of $2,666.50. In 1945 petitioner purchased about eight pieces of residential property, four of which he sold within the year. Two pieces of the property sold had been held for a period slightly in excess of six months. In the same year petitioner sold six or seven pieces of urban residential property that he held at the beginning of the year. About four of these residential properties were sold at public auction which was advertised pursuant to instructions received from petitioner. Petitioner also sold eight more of the lots from the land that he had subdivided. One of the sales transactions from which he reported gain in the taxable years *249 was of property purchased and sold jointly with a Lynchburg real estate dealer. Another was sold to two Lynchburg real estate dealers. Another piece of residential property was purchased at auction and resold almost immediately. Petitioner realized a net gain from these sales, as computed by respondent, of $14,372.11. In 1946 petitioner sold six pieces of residential property. He sold 12 more of the lots from the tract that he had subdivided. He also sold a cabin on a lake near Lynchburg at a 50 per cent profit. In addition he purchased some lots that he held for only three months before selling, a piece of residential property which he held less than one month, two pieces of residential property which he held less than six months, and one piece that he held less than ten months. Three of these short-term transactions and one long-term transaction represented joint ventures with a Lynchburg lawyer. Petitioner's net gain from these sales, as computed by respondent, amounted to $13,329.89. A majority of the sales in question were made through real estate agents. Some of the sales of residential property were made by petitioner directly to the purchaser, however, and some were owned *250 and sold jointly with real estate dealers. The increase in the number of sales of residential property in 1945 and 1946 was due in a large measure to demands, by banks who had loaned petitioner funds to finance the purchase of this property, that he reduce the amount of his indebtedness to them. Petitioner did not sustain a loss on the sale of any piece or parcel of real estate in any of the taxable years. Petitioner's net profit (gain) [2] from the sale of real estate in the taxable years was as follows: 1942
$ 2,392.05
1943
6,239.42
1944
2,906.50
1945
14,372.11
1946
13,329.89
$39,239.97
The petitioner realized *251 gain from the sale of the following properties acquired for rental and held for more than six months: Year
Property
1942
Golf Park
1942
Wright Shop Road
1943
Main Street
1943
Roberts Street
1943
Forest Street
1943
1107-9 & 1115-17, 5th St.
1944
408-10 Taylor Street
1944
714 Polk Street
1945
1101 Fifth Street
1945
2021 Tulip Street
1945
3125 Fort Avenue
1945
3081 Fort Avenue
1945
900 Kemper Street
1945
1516-16 1/2 Locust St.
1945
2106 Pocahontas Street
1945
2015 Main Street
1945
600 Franklin Street
1945
920 Second Street
1945
210 Stonewall Street
1946
1617 Church Street
1946
314-16 Johnson Street
1946
1909 Hudson Street
1946
406 Norwood Street
1946
2435 Kemper Street
1946
Lovers' Lane
1946
2225 High Street
1946
34 Cabell Street
1946
300-302 Withers Street During the taxable years the petitioner did not hold the above listed properties primarily for sale to customers in the ordinary course of his trade or business. All other properties held by petitioner for more than six months and sold during the taxable years were held by him primarily for sale to customers in the ordinary course of his trade or business. *252 Petitioner's residential properties brought low rentals but his investment in such properties was in most instances small. Petitioner kept no books of account during the taxable years. On the properties which rental agents handled for him he received monthly and annual statements showing income and expenses. On the few properties which were not handled through rental agents petitioner kept a record of receipts and paid for expenses and improvements by check, nothing on the check stubs the nature of each expenditure. Petitioner's 1945 income tax return showed the following information: "Gross Rents - Received from Rental Agents - Hopkins Bros., W. L. Moore; Bank; Steptoe & Patterson & O. H. Reynolds Co.,… $8,489.65." Petitioner's 1946 income tax return showed the following information: "Gross Rents - Received from Rental Agents Hopkins Bros., W. L. Moore; Bank; Steptoe & Patterson & O. H. Reynolds Company $9,352.21." Petitioner sold residential property located at 210 Stonewall Street on October 22, 1945. The contract of sale provided for a total consideration of $1,000, $75 of which was to be paid in cash at the time the contract was signed, and the balance to be paid at *253 the rate of $12 per month, with interest at 6 per cent per annum on unpaid balances, payable monthly. Under the terms of the contract title was to be transferred to the purchasers when they had paid as much as $500 on account of the purchase price. In the event the purchasers failed to pay monthly installments when due, the contract became null and void and all sums theretofore paid by the purchasers were deemed to be rent and liquidated damages. The contract of sale for the residential property at 300 Norwood (Withers) Street was dated April 30, 1946, and the contract of sale for the property at 302 Norwood (Withers) Street was dated April 15, 1946. These two contracts provided for down payments of $300 in cash and that the balance of the $2,000 sales price should be paid at the rate of $25 per month. The petitioners agreed to transfer title by deed to the purchasers when the contract price had been paid in a sufficient amount so that the balance due could be financed in a building and loan association. It also provided that in the event the purchasers failed to pay monthly installments when due the contract would become null and void and all sums theretofore paid deemed to be rent *254 and liquidated damages. Petitioner received a monthly statement of receipts and disbursements from O. H. Reynolds Co. The monthly statement dated December 25, 1945, showed receipts of $17.78 and $48 on the Stonewall Street property and also receipts on other properties which the rental agent was handling for petitioner. The statement of receipts of Reynolds Co. from June to November, inclusive, of 1946 showed, among others, receipts of $25 per month on the properties at 300 and 302 Norwood (Withers) Street. Opinion As our findings disclose, the petitioner during the taxable years made sales of certain residential properties rented by him, and also of certain lots and unimproved real estate. He contends that any gains realized from the sales of any of these properties held by him for more than six months are long-term capital gains taxable only to the extent of 50 per cent. The respondent has determined that the gains from the sales of all of petitioner's properties are ordinary income, all of which are includible in his taxable income. The pertinent provision of the Internal Revenue Code is section 117(j) set forth in the margin.[3] The respondent contends that the petitioner's *255 property was held by him primarily for sale to customers in the ordinary course of his trade or business, and that he is not, therefore, entitled to any benefit from this provision. In support of this contention, the respondent points to the frequency and continuity of the sales. In this connection this Court made the following comments in Frieda E. J. Farley, 7 T.C. 198, under facts somewhat similar to those here involved: Respondent contends primarily that the sales involved were so frequent and continuous as to constitute such activity a trade or business. It is unquestionably true that the frequency and continuity with which a particular activity is carried on is a primary consideration in determining whether such activity constitutes a trade or business. It is significant to note, however, that the cases which have applied this test to real estate transactions involved elements of development and substantial sales activity which are essentially lacking in the instant case. See Richards v. Commissioner, 81 Fed. (2d) 369; Snell v. Commissioner, 97 Fed. (2d) 891; Welch v. Solomon, 99 Fed. (2d) 41; Ehrman v. Commissioner, 120 Fed. (2d) 607; *256 Oliver v. Commissioner, 138 Fed. (2d) 910; Gruver v. Commissioner, 142 Fed. (2d) 363; Brown v. Commissioner, 143 Fed. (2d) 468; James Lewis Caldwell McFaddin, 2 T.C. 395. In none of these cases did the taxpayer maintain the passive posture held by petitioner in the instant case. *257 In the Farley case the taxpayer purchased some property for use in connection with his nursery business. The property had been platted some years before its purchase and after its acquisition the city built streets thereon at its own expense. During the taxable year the taxpayer sold some lots. He made no efforts to sell, but accepted such offers as were made. He did not advertise the property for sale, hired no agents, erected no signs, did not list the property, or construct any improvements to facilitate its sale for residential purposes. Noting that the frequent and continuous character of the sales resulted notwithstanding the taxpayer's passivity rather than from any business activity on his part, we refused to apply the "frequency and continuity" test, and held that the property of the taxpayer was not held primarily for sale to customers in the ordinary course of his trade or business and that the profit derived from the sales in question was taxable as a long-term capital gain and not as ordinary income. We feel that a similar conclusion should be reached in the instant proceeding with respect to the residential property which the petitioner acquired for rental purposes, *258 held for more than six months, and sold during the taxable years. We are convinced from the evidence that he purchased such property from 1936 to and including the taxable years as an investment so that he might derive profit from rentals. It was not purchased or held primarily for sale, and such sales as were made during the taxable years of this residential property resulted from unsolicited offers to purchase made by tenants and others or from pressure put on petitioner during the years 1945 or 1946 by banks, who had loaned him money to finance purchases, to have him repay a substantial portion of the money loaned. Sales made under such circumstances do not establish that petitioner was holding this residential property "primarily for sale to customers in the ordinary course of his trade or business." We have made a finding that this residential property was not so held, and it follows that any gains realized by petitioner from the sale of the properties listed in our findings which were held for more than six months are taxable as capital gain and not as ordinary income. Any gain realized from residential property sold which was not held for more than six months is taxable as ordinary *259 income. See Nelson A. Farry, 13 T.C. 8. In addition to residential property, the petitioner also sold some unimproved property. Two tracts of this unimproved property, one of 225 acres and the other of 134 acres, was originally acquired by petitioner for the purpose of removing and selling timber, and was later subdivided into lots and a number of the lots sold during the taxable years. With respect to this unimproved property, we think the petitioner qualifies as a dealer in real estate and in the absence of any convincing evidence to the contrary, we hold that this unimproved property was held by him during the taxable years primarily for sale to customers in the ordinary course of trade or business. Any gains realized by petitioner from the sale of unimproved property during the taxable years are therefore taxable as ordinary income. The remaining issue is whether respondent erred in increasing petitioner's net income as reported on the ground that he failed to report certain sales of real estate. This issue relates to sales made by petitioner in 1945 of a property at 210 Stonewall Street, and in 1946 of properties located at 300 Norwood (Withers) and 302 Norwood *260 (Withers) Street. It is the contention of the petitioner that the initial and monthly payments received from the purchaser of the Stonewall Street property were included in his income for 1945 as rent, and that the initial and monthly payments on 300 and 302 Norwood (Withers) Street properties were included in his income for 1946 as rent. The proof submitted in support of this contention consists of the contracts of sale referred to in our findings; monthly statements of O. H. Reynolds Co., rental agents for petitioner, showing amounts received and disbursed during the months of December 1945, and February to November inclusive of 1946; and testimony of petitioner that he included the initial and installment payments made in 1945 by the purchaser of the Stonewall Street property in his return for 1945 and the initial and installment payments on the Norwood (Withers) Street properties as rent in his return for 1946. In his returns for 1945 and 1946 the petitioner reported the amount of rental income received by him as follows: 1945 Return
Gross Rents - Received from Rental
Agents - Hopkins Bros., W. L. Moore;
Bank; Steptoe & Patterson and O. H.
Reynolds Co
$8,489.65
1946 Return
Gross Rents - Received from Rental
Agents Hopkins Bros., W. L. Moore;
Bank; Steptoe & Patterson and O. H.
Reynolds Company
$9,352.21
*261 As the returns disclose, petitioner received payments from four rental agents and a bank. He has submitted in evidence some of the monthly reports made by one of these agencies, O. H. Reynolds Co., which show that from December 1945 to November 1946 this agency included in the list of receipts it furnished him each month not only rentals but also installment payments made on the three properties in question. Reports received from the other rental agents and the bank are not in evidence. If they had been, it would have been a simple matter to determine whether the payments in question had been reported as rental income. Petitioner had the necessary proof in his possession but failed to submit it for our consideration. Under these circumstances we do not think that his unsupported statement that he did include payments made by purchasers as rental income is sufficient to overcome the prima facie correctness of the respondent's determination. This issue is decided in favor of the respondent. Decision will be entered under Rule 50. Footnotes
1. The remaining half interest in the timber had been sold by petitioner prior to the taxable years.↩
2. These figures show 100 per cent of the gain from all sales after adjustment by examining officer who made certain additions to reported gain as the result of unreported sales, adjustment of basis and selling prices, etc. None of the computations of gain are disputed by petitioner, and only in three instances is there any challenge of the additions on account of "unreported sales", the only question being raised in those instances being whether petitioner reported as gross rentals in his returns the amounts paid under contracts of sale.↩
3. SEC. 117. CAPITAL GAINS AND LOSSES. * * *
(j) Gains and Losses From Involuntary Conversion and From the Sale or Exchange of Certain Property Used in the Trade or Business. - (1) Definition of property used in the trade or business. - For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. * * * (2) General Rule. - If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business * * * exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * *↩