Walter A. Beers and Margaret M. Beers v. Commissioner.
Beers v. Commissioner
Docket No. 93858.
United States Tax Court
T.C. Memo 1963-120; 1963 Tax Ct. Memo LEXIS 224; 22 T.C.M. (CCH) 563; T.C.M. (RIA) 63120; April 29, 1963
Walter A. Beers, pro se, 20 Lee Terrace, Short Hills, N. J. Gerald N. Daffner, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency of $1,788.82 in petitioners' income tax for the calendar year 1958. The issue for decision is whether the profit realized by petitioners on the sale of certain pieces of unimproved real estate was ordinary income or capital gain. Findings of Fact Some of the facts have been stipulated and are found accordingly. Walter A. Beers and Margaret M. Beers, husband and wife residing in Short Hills, New Jersey, filed a joint Federal income tax return for the calendar year 1958 with the district director of internal revenue at Newark, New Jersey. Margaret M. Beers is a petitioner herein solely by reason of having *225 filed a joint return with her husband for the year 1958. Walter A. Beers (hereinafter referred to as petitioner) has at all times material hereto used the cash receipts and disbursements method of accounting and a calendar year basis for reporting his income for Federal income tax purposes. Petitioner is a practicing attorney in the State of New Jersey and maintains offices in Newark, New Jersey. He was admitted to practice law in New Jersey in 1922 and has, since his admission, been actively engaged in the private practice of law. As an attorney he possesses specialized knowledge and experience in the fields of wills and estates and real estate. Soon after petitioner was admitted to practice law, he became a director of three building and loan associations and in this capacity appraised real estate. Except for the years 1925 and 1926, when he made certain investments in stocks which he disposed of prior to 1929, petitioner has made no investments in any assets other than real estate and first mortgages on real estate. Beginning around 1935 and for some years thereafter petitioner invested in various rental properties and in 1944 he sold a number of these properties and purchased *226 a commercial rental property which he still owned at the date of trial of this case. Petitioner has also continued to own certain other rental properties and has bought other rental properties since 1944. Around 1949 petitioner decided to invest in first mortgages since he began to doubt whether real estate would further appreciate in value. Prior to 1956 petitioner had never purchased any vacant land. In 1956 petitioner purchased 6 vacant lots from the city of Newark. In 1957 he purchased 13 vacant lots, 7 of these from the city of Newark, and 2 from the Township of West Orange, New Jersey. In 1958 he purchased 6 vacant lots, 1 of which was purchased from the city of Newark, and in 1959 he purchased 7 vacant lots, 4 of these being purchased from the city of Newark. After 1959 petitioner made no further purchases of vacant lots. Petitioner abandoned one of the lots purchased in 1956 and by the end of 1961 had sold the remaining 31 lots, 4 sales having been made in 1956, 7 in 1957, 8 in 1958, 6 in 1959, 3 in 1960, and 3 in 1961. In addition to the sales of vacant lots, petitioner in 1956 sold 4 rental properties, in each of the years 1957 and 1958 sold 1 rental property, and in 1960 *227 sold 2 rental properties. All of the vacant lots sold by petitioner in 1956 and 1957 and 4 of the vacant lots sold by him in 1958 had been acquired by petitioner less than 6 months prior to the date of sale thereof. It is the practice of the city of Newark to accept offers from anyone for properties owned by it for the assessed value. The law requires the city to advertise in the newspaper when it intends to accept any offer to purchase land, which advertisement states the date the offer will be accepted. Anyone can then make a better offer, and the sale is made to the highest bidder. Petitioner submitted offers to the City Clerk of Newark for the properties he purchased. Vincent Caruso, a licensed real estate broker in the State of New Jersey, would sometimes appear at the meetings of the City Council of Newark for petitioner. If another person had made an offer to the city unknown to petitioner until the advertisement appeared in the paper, petitioner sometimes bid more and obtained the purchase at the City Council meetings of lots for which he had not made an offer to the city. These bids were sometimes made for petitioner by Caruso but only at petitioner's direction and for *228 the amount petitioner authorized Caruso to bid. Petitioner always made the decision himself whether to buy the lot and at what price. Caruso received no remuneration at the time lots were purchased by petitioner but when Caruso arranged a sale of a lot for petitioner he received a percentage of the profits on the property sold. In most instances Caruso received 50 percent of the profit realized from the sale of properties when he had arranged the sale for petitioner. Whatever amount petitioner paid to Caruso was added by petitioner to the amount he paid for the property in computing the profit he received from the transaction. Around 1956 there had been rumors in Newark of two large corporations moving their offices away from the city. Also, around that time there was a change in the city administration. The corporations thereafter decided to remain in the city. For this reason petitioner felt that demand for land in the city of Newark would increase and that vacant land would constitute a good investment. Petitioner did not advertise the lots he purchased for sale. He did not list the lots with brokers or solicit individuals as purchasers. Caruso knew of petitioner's purchases *229 and most of petitioner's sales were made through Caruso, but some sales were made to builders who approached petitioner directly. Most of the purchasers of vacant properties from petitioner during the period 1956 to 1961 were engaged in the construction of private homes. Caruso as a licensed broker handled purchases and sales of real estate for many persons other than petitioner. Petitioner has never held a realtor's license and never sold real estate as a realtor for a commission. Petitioner performed all of the necessary legal work in connection with the purchase and sale of the vacant lots such as preparing the contracts and deeds and the only time he spent in connection with these purchases and sales was the time devoted to this work. Petitioner sold a number of vacant properties within a period of less than 6 months from the date he had acquired them because within this period Caruso would produce a purchaser willing to pay a price that would result in a profit to petitioner which in his judgment should be accepted. During the years 1955 and 1956 petitioner received income from various sources including the following: Gross Receipts
Net Income
Gain from
Net Income
from Law
from Law
Sales of Interests
from
Interest on
Practice
Practice
in Real Estate
Rentals
Mortgages
1955
$21,484.63
$13,626.34
None
$5,795.42
$1,018.00
1956
14,752.15
7,093.06
$ 1,176.80 *
5,181.46
1,445.00
1957
17,005.00
8,919.00
19,494.00
5,618.51
1,515.00
1958
18,683.00
5,328.00
22,072.00 *
7,801.00
1,862.00
1959
23,846.00
8,894.00
5,231.00
7,439.00
1,881.00
1960
20,448.00
5,728.00
11,117.00 *
7,504.00
1,314.00
1961
25,930.00
9,737.00
5,522.00
5,515.78
4,394.00
*230 Petitioner on his income tax return for 1958 reported the profit from the sale of four unimproved lots as short-term capital gain and the profit from the sale of four unimproved lots as long-term capital gain. Respondent in his notice of deficiency increased petitioner's income as reported by the amount of $3,806 with the following explanation: It has been determined that the gains you reported from the sales of eight unimproved real estate lots sold in 1958 constitute ordinary income as gains from the sales of property held for sale to customers in the ordinary course of a trade or business under section 1221(1) of the Internal Revenue Code of 1954, and, therefore, you are not entitled to the capital gains treatment on such gains. Opinion The question here is whether petitioner's gains from the sale of certain unimproved lots in 1958 constituted ordinary income or capital gain. Under section 1221 of the Internal Revenue Code of 1954[1] the lots sold constitute capital assets unless they are excluded from that definition because of being property held primarily for *231 sale to customers in the ordinary course of petitioner's trade or business. As is stated in the cases relied upon by petitioner as well as those relied upon by respondent, the issue is one of fact. There are many factors to be considered, no one of which is in itself determinative. Some of the factors which have been considered in the many cases involving this issue are the purpose of the taxpayer in the acquisition and disposition of the property, the activities of the taxpayer or of those acting on his behalf with respect to improvement of the property, the number and continuity of sales, the extent of advertising, the time expended in the disposition of the property, and the substantiality *232 of the gains from the sale of the property as compared to income from other sources. James G. Hoover, 32 T.C. 618 (1959); Wellesley A. Ayling, 32 T.C. 704 (1959); Real Estate Corporation, 35 T.C. 610, affd. 301 F. 2d 423 (C.A. 10, 1962), certiorari denied 371 U.S. 822; John D. Riley, 37 T.C. 932 (1961) on appeal (C.A. 5, Aug. 20, 1962) and Fritz Thompson, 38 T.C. 153 (1962) on appeal (C.A. 5, Aug. 2, 1962). The facts in the instant case show that petitioner had for many years invested in real estate and mortgages because of his knowledge of real estate values and his feeling that he had the ability to invest advantageously in real estate. Prior to 1956 petitioner's investments had been in rental properties and first mortgages. The facts also show that in the years 1956, 1957, 1958 and 1960 petitioner sold, in addition to the vacant property, some rental properties. The treatment of the gain from the sale of the rental property in 1958 is not in issue in this case since respondent in his notice of deficiency did not question petitioner's reporting of the gain from this property as capital *233 gain. Petitioner testified that he purchased the vacant lots as investments with the idea of holding these lots until they greatly appreciated in value. He stated that because of the situation in Newark in 1956 and for a while thereafter it was his judgment that property would appreciate in value tremendously and that his intention was to hold the property for such appreciation. Actually, some of the lots he purchased appreciated more rapidly than he had anticipated and he sold them shortly after they were acquired. The major argument of respondent is that since petitioner acquired these lots with the idea of selling them, the lots were property held by petitioner primarily for sale to customers in the ordinary course of his trade or business. The fact that property may be acquired with the expressed intention of at some time selling it, is not controlling as to whether it is held for sale in the ordinary course of the taxpayer's trade or business. As we stated in Wellesley A. Ayling, supra, p. 708
The primary thrust of respondent's argument, and our attention, is directed to the fact that the property here in issue was in the first instance purchased by petitioners *234 with the express intention of reselling it. Petitioners do not deny this - to the contrary, they are the first to say that they did not want the property and that at the time of purchase their financial circumstances dictated disposal in the most expeditious manner possible. This circumstance, however, is not in itself controlling. * * * James G. Hoover, supra, also involved the purchase of vacant property but in holding that the property there involved was acquired by the taxpayers for investment, we stated, p. 628: Respondent makes mention of the fact that so much of the real estate was vacant, and therefore, it could not be expected to produce investment income. We feel this rather supports petitioners. It is understandable that petitioners, in a high income tax bracket, might well seek investments of the nature of the so-called "growth" investments. Buying non-income-producing realty to hold for expected rise in value is much like investments in the stock market where stock is purchased purely as an investment, not upon the theory that it will produce immediate income, but that it has growth value. Under the circumstances in the instant case where petitioner *235 had for many years invested in real estate, we feel that his investments were much like investments in stock. Petitioner made no improvements to the properties but sold them in the state in which they were purchased. His sales were made through a licensed broker. Some of the sales were made shortly after the property was purchased but, where the sale was within 6 months, petitioner, of course, reported the profit as short-term capital gain. Had the assets petitioner bought and sold been stock, the short holding period would not have caused the gain to become other than capital gain, short term or long term depending on the holding period. Under the unusual circumstances of the instant case, we see no reason why a different result should be reached because the assets which petitioner bought and sold were vacant lots. There is none of the indicia of a trade or business in petitioner's actions. He spent little time in connection with the purchase and sale of the properties. He did not advertise the properties for sale. Respondent argues that the realtor, Caruso, was petitioner's agent and that petitioner conducted his business through Caruso. Respondent in support of this argument relies *236 upon John D. Riley, supra, in which we stated "It is an acceptable principle of law that one may conduct a business through agents and although others may bear the burden of management the business is nonetheless his." The facts in the instant case are clear that Caruso had no authority to commit petitioner to the purchase or the sale of property. On some occasions petitioner would authorize Caruso to appear at a council meeting of the city of Newark and offer a price in his behalf in excess of a previously advertised price, but petitioner determined the amount to be offered and Caruso merely acted in accordance with petitioner's direction. In most instances petitioner wrote directly to the city of Newark with respect to his purchases. Caruso had no authority to sell petitioner's properties but could merely submit offers which he might receive to petitioner, and petitioner, alone, made the decision whether or not to sell. Caruso was not petitioner's agent in the sense of bearing the burden of management of any business for petitioner. Caruso's handling of petitioner's purchases and sales of real estate was no different from a stock broker handling purchases and sales of *237 stock for his client. Petitioner made purchases of lots in only 4 years and sales in only 6 years, and the total number of lots involved was 31. This is not the continuity of sales over a long period of time that has been given substantial consideration in many instances where it has been held that the taxpayer was engaged in the trade or business of selling real estate. As we stated in Frieda E. J. Farley, 7 T.C. 198, 202 (1946): * * * It is unquestionably true that the frequency and continuity with which a particular activity is carried on is a primary consideration in determining whether such activity constitutes a trade or business. It is significant to note, however, that the cases which have applied this test to real estate transactions involved elements of development and substantial sales activity which are substantially lacking in the instant case. * * * Cf. Fritz Thompson, supra. Both the elements of development and substantial sales activity are lacking in the instant case as they were in Frieda E. J. Farley, supra. In the year 1958, petitioner's gains from the sale of unimproved lots were in excess of his net income from other *238 sources. However, over the years 1956 through 1961 which were the only years in which petitioner purchased and sold unimproved lots, the average amount of gains from such sales is approximately $10,700 yearly as compared with average annual net income from other sources of approximately $16,200. On the basis of the entire record, we hold that the unimproved lots sold by petitioner in 1958 were not held primarily for sale to customers in the ordinary course of a trade or business. Decision will be entered for petitioner. Footnotes
*. Exclusive of gains from sales of rental properties.↩
1. SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;↩