Raymond Saltzman v. Commissioner.
Saltzman v. Commissioner
Docket No. 43240.
United States Tax Court
T.C. Memo 1955-18; 1955 Tax Ct. Memo LEXIS 321; 14 T.C.M. (CCH) 69; T.C.M. (RIA) 55018; January 27, 1955
*321 Petitioner owned 23 residential properties at the beginning of 1944 and purchased 78 additional residential properties during the years 1944 through 1947. During such years, he resold 81 of his residential properties, holding only 20 such properties at the end of the 4-year period. The gain from the sale of 72 of such properties is in issue. Held, on the facts, that these houses were held for sale whenever a profitable price could be obtained, and the gain derived from their sale is taxable as ordinary income. Herman H. Krekstein, Esq., and Gerald Krekstein, Esq., for the petitioner. John J. Hopkins, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income taxes determined against Raymond Saltzman for the years 1946 and 1947 in the respective amounts of $4,493.77 and $3,321.39. The sole issue to be decided is whether the gains realized by petitioner on the sale of various real properties during the years 1944 to 1947, inclusive, are taxable as ordinary income or as capital gains. Certain sales made on the installment basis during 1944 and 1945 are involved because of the receipt of payments *322 therefor during the taxable years 1946 and 1947. Petitioner has waived an issue raised by the pleadings with respect to respondent's disallowance of a bad debt deduction in the amount of $355 in the year 1946. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Raymond Saltzman (hereinafter referred to as petitioner) resided in Haddonfield, New Jersey, during 1946 and 1947. He filed his income tax returns for such years, on the cash basis, with the collector of internal revenue for the first district of New Jersey. Petitioner is an attorney-at-law and has been engaged in the practice of law since 1928, with offices at Camden, New Jersey. During the years 1936 to 1952, petitioner purchased various commercial and residential properties and parcels of land. The following table sets forth petitioner's net income, during the years 1937 to 1952, from the practice of law; his gross and net incomes from rentals of his commercial and residential properties; income from interest, dividends and other sources; and profits on sales of real estate: Interest,
Gains from
Dividends,
Sale of
Law * Prac-
Rentals
Rentals
and Other
Real Estate
Year
tice (Net)
(Gross)
(Net)
Sources
Consummated
1937
$ 342.96
$ 60.00
$ 60.00
$ 15.00
1938
806.31
30.00
30.00
39.60
1939
5,784.60
60.00
36.45
36.37
1940
6,104.20
558.13
** 447.65
1,426.35
1941
7,116.17
734.93
416.47
993.50
1942
5,917.85
2,532.25
188.10
1,980.50
1943
4,451.97
11,760.09
( 277.86)
2,504.66
$ 602.60
1944
(436.06)
15,786.78
( 565.49)
4,115.07
11,990.50
1945
(797.42)
26,478.30
(1,020.34)
4,015.62
6,838.46
1946
(465.08)
30,619.47
2,095.53
4,207.92
*** 19,747.76
1947
1,261.40
29,952.28
(1,511.29)
4,078.69
21,733.20
1948
749.54
26,805.65
8,046.60
6,801.69
19,308.50
1949
1,112.29
45,820.99
10,404.70
7,330.15
11,220.76
1950
3,590.87
47,592.57
11,748.58
6,515.32
4,200.79
1951
9,377.54
48,492.49
2,364.73
6,768.41
6,947.44
1952
3,387.97
52,071.68
5,592.66
6,961.50
*323 The various properties purchased by petitioner included dwelling houses, apartments, stores, offices, garages, vacant land, farm land, and a school. The total undepreciated cost of his various real properties amounted to $112,952.78 at the end of 1947, and $232,614.04 at the end of 1952. Petitioner's activities in the purchase and sale of real property, during the years 1936 to 1952, inclusive, are illustrated by the following table: Properties
at Start
Properties
Properties
of Year
Purchased
Repossessed
Properties Sold Year
Number
Number
Cost
Number
Basis
Number
Sales Price
Profit
1936
0
1
$ 100.00
1937
1
1
3,000.00
1938
2
1
2,400.00
1939
3
1940
3
2
750.00
1941
5
1
950.00
1942
6
2
46,000.00
1943
8
23
24,050.00
1
$ 1,900.00
$ 602.60
1944
30
12
20,400.00
16
31,200.00
11,990.50
1945
26
* 45
114,045.96
11
24,797.50
6,838.46
1946
60
24
48,612.78
2
$4,547.50
** 31
81,290.00
19,747.76
1947
55
1
10,000.00
28
79,947.50
21,733.20
1948
*** 28
12
94,250.00
15
39,975.00
19,308.50
1949
*** 30
5
35,700.00
2
448.09
** 9
20,400.00
11,220.76
1950
29
2
29,750.00
1
1,460.41
** 5
12,600.00
4,200.79
1951
27
2
3,424.53
1
1,685.28
** 2
11,550.00
6,947.44
1952
28
*324 The properties here in issue consist of 72 residential properties which were sold by petitioner during the years 1944 to 1947. The remaining properties sold during these years are not in issue since they consist of sales which were completely consummated in 1944 and 1945, or which were reported as short-term capital transactions. Petitioner owned 23 residential properties at the beginning of 1944 and 20 residential properties at the end of 1947. He owned a total of 101 different residential properties during these years and had sold 81 of them by the end of the 4-year period. Forty-three of such properties were purchased as a unit by petitioner. These 43 units were managed by petitioner's wife, who was a licensed real estate broker. Petitioner's wife was paid a fee for her services in managing the properties and she received a commission on the sale of each of these 43 properties. Two *325 of these 43 houses were resold by petitioner on October 24, 1945, which was approximately 3 months after he had received clear title to the properties. Petitioner sold some of the rental houses in question because they required repairs, and he felt that he could earn more by selling them than by making an additional investment in repairs. Certain of the houses were sold on the installment plan and the interest income received on the balances due petitioner constituted an additional inducement to make such sales. Petitioner advertised the sale of various of his rental properties in the classified section of the Camden Courier Post during the period June 6 to June 12, 1946. Extensive advertising of the sale of residential homes was unnecessary during the taxable years involved as there was a large demand for such homes. Petitioner did not list his properties for sale with real estate brokers or put up "For Sale" signs. Petitioner, as an attorney-at-law, was not required to have a real estate license to act as an agent or broker in the sale of real estate in the State of New Jersey. The properties here in issue were held by petitioner for sale to customers in the ordinary course *326 of his trade or business. Opinion RICE, Judge: Respondent has determined that the properties here in issue were held by petitioner "primarily for sale to customers in the ordinary course of his trade or business" and that, consequently, the gains realized on their sale are not subject to capital gains treatment under section 117(j) of the Internal Revenue Code of 1939. [1] Petitioner contends that these gains are not properly taxable as ordinary income because these properties were rental properties held solely for investment purposes. *327 The purpose for which these properties were held is a factual question and little purpose would be served by reviewing each of the cases cited by the parties since each case must be decided according to its own facts. King v. Commissioner, 189 Fed. (2d) 122 (C.A. 5, 1951), certiorari denied 342 U.S. 829 (1951); Rubino v. Commissioner, 186 Fed. (2d) 304 (C.A. 9, 1951), certiorari denied 342 U.S. 814 (1951). However, these cases have developed certain criteria which are of aid in resolving the problem. No single test is determinative, Walter R. Crabtree, 20 T.C. 841 (1953), but among the principal ones are the frequency, continuity, and substantiality of the sales consummated by the taxpayer. Rollingwood Corp. v. Commissioner, 190 Fed. (2d) 263 (C.A. 9, 1951). Although there is a paucity of information in the record before us as to the subjective intent of petitioner, on the basis of these various objective tests, we must conclude that petitioner has failed to prove that he was not engaged in the business of selling residential properties during the years here in issue and that the properties in question *328 were not sold during the ordinary course of this business. Petitioner argues that these various properties were acquired for rental purposes, but he has failed to satisfactorily explain the frequency and continuity of the sales of such properties over the 4-year period, 1944 through 1947. Starting with 23 residential properties at the beginning of 1944, he acquired 78 additional properties during the 4-year period. Yet he owned only 20 such properties at the end of the period for he had resold 81 of them during the 4 years. Petitioner's sole explanation is that many of the properties required repairs and he considered it advisable to sell them. It seems improbable that almost all the residential properties held by petitioner during these years proved to be bad investments. Rather, it would seem that petitioner was, at all times during this period, interested in reselling these houses whenever a profitable price could be obtained. This rapid turnover belies any intention to acquire and hold an investment in rental housing. Moreover, whatever petitioner's reasons for selling the various properties may have been, when we consider the frequency, continuity and substantiality of his sales, *329 and the rapid turnover, it is apparent that his conduct was that of one engaged in the business of selling residential housing. The record is not clear as to how customers were obtained for each of the 72 sales in issue, petitioner contending that there was no sales solicitation. It is true that only limited evidence of advertising and sales promotional activity was introduced; but petitioner, himself, testified that extensive promotion was not required in order to stimulate sales during these years. However, it may be inferred from the decline in petitioner's income from his law practice during these years and the concurrent increase in his earnings from the sale of real property that he was devoting a substantial portion of his time and effort to the consummation of these sales. Petitioner relies on Frieda E. J. Farley, 7 T.C. 198 (1946), and other cases holding that the volume, frequency, and continuity of sales are not determinative where the taxpayer remains entirely passive. However, these cases involve the passive liquidation of long-standing investments in real property, whereas the rapid turnover in the instant case does not indicate that the properties here *330 in question were really considered as an investment. It seems clear that such properties were, at all times, held for sale to customers in the ordinary course of petitioner's business, and the gain therefrom is consequently properly taxable as ordinary income. Decision will be entered for the respondent. Footnotes
*. Includes salary received as assistant to the Attorney General of the State of New Jersey during the years 1939 to 1944. ↩
**. Includes $788.85 from sale of gravel. ↩
***. Includes gains on repossessions.↩
*. This includes 43 residences on Royden Street, Camden, New Jersey, purchased jointly with Mr. Weiner. ↩
**. Includes repossessed properties. ↩
***. Five sales made in 1948 and one sale in 1949 were sales of portions of farm properties which did not reduce the total number of properties held.↩
1. SEC. 117. CAPITAL GAINS AND LOSSES. * * *
(j) Gains and Losses from Involuntary Conversion and from the Sale or Exchange of Certain Property Used in the Trade or Business. - (1) Definition of Property Used in the Trade or Business. - For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Such term also includes timber with respect to which subsection (k)(1) or (2) is applicable. Such term also includes livestock, regardless of age, held by the taxpayer for draft, breeding, or dairy purposes, and held by him for 12 months or more from the date of acquisition.↩