R. M. Clayton and Opal Clayton, Husband and Wife v. Commissioner.
Clayton v. Comm'r
Docket No. 54453. United States Tax Court
T.C. Memo 1956-21; 1956 Tax Ct. Memo LEXIS 276; 15 T.C.M. (CCH) 105; T.C.M. (RIA) 56021; January 25, 1956
*276 1. Petitioner R. M. Clayton has been a real estate broker since 1923. Between September 1947 and January 1949, petitioner purchased certain parceis of unimproved land, divided into numerous lots, which he alleges he acquired as an investment. During the years 1949 through 1952, petitioner sold 17 lots from said parcels at a profit. Held, the lots in issue were held primarily for sale to customers in the ordinary course of petitioner's business, and profits derived from sales of such land are not entitled to capital gains treatment within section 117, I.R.C., 1939. Held further, in computing the taxable gains resulting from the sales in question, 65 per cent of the cost of property designated as parcel No. 5 is allocable to the land fronting on Forest Avenue and 35 per cent of such cost is allocable to the land fronting on Grand Avenue. 2. Petitioners failed to introduce any evidence to explain their failure to file declarations of estimated tax for the years 1950, 1951 and 1952 as required by section 58(a), I.R.C., 1939. Held, petitioners are liable for the addition to their income tax provided by section 294(d)(1)(A), and for the further addition for substantial understatement *277 of estimated tax imposed by section 294(d)(2). Harold B. Stone, Esq., Empire Building, Knoxville, Tenn., for the petitioners. Herman Wolff, Jr., Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income taxes and additions to the tax under section 294(d)(1)(A) and 294(d)(2), Internal Revenue Code of 1939, of the petitioners as follows: Section
Section
294(d)(1)(A)
294(d)(2)
Year
Deficiency
Addition
Addition
1949
$ 38.00
1950
4,640.10
$560.27
$342.58
1951
406.00
34.76
21.10
1952
1,285.50
128.55
77.13
Totals
$6,369.60
$723.58
$440.81
*278 The issues to be decided are (1) whether or not certain vacant lots sold during the taxable years involved were properties then held by R. M. Clayton primarily for sale to customers in the ordinary course of his business; (2) the proper allocation of the cost of the property designated as parcel No. 5 between lots fronting on Forest Avenue and lots fronting on Grand Avenue, and (3) whether additions to the income tax under section 294(d)(1)(A) and 294(d)(2), are due from petitioners for each of the taxable years 1950, 1951 and 1952. Findings of Fact The facts are partly stipulated and, to the extent so stipulated, are incorporated herein by reference. R. M. Clayton, hereinafter sometimes referred to as the petitioner, and Opal Clayton are husband and wife and reside in Knox County, Tennessee. The petitioners filed Federal income tax returns for 1949 and 1951 with the collector of internal revenue for the district of Tennessee intending them to be joint returns. Petitioners admit joint and several liability for any deficiency resulting in this proceeding, and agree that the returns for 1949 and 1951 are to be treated as joint returns. Petitioners also filed joint income tax *279 returns for the calendar years 1950 and 1952 with the collector of internal revenue for the district of Tennessee. They did not timely file declarations of estimated tax for the years 1950 to 1952, inclusive, as required by section 58(a), Internal Revenue Code of 1939 or make payments thereon. Petitioner has been a licensed real estate broker in and around Knox County, Tennessee, since 1923. His activities as a broker during the taxable years in question were not extensive. Petitioner, before 1947, had never bought or sold any real estate in his own name or for his own account. The following purchases of parcels of undeveloped real estate, each containing various lots, were made by the petitioner in and around Knox County, Tennessee, during the years 1947 to 1949, inclusive: Date of
Parcels
Purchase
Purchase
Purchased
Price
September 23, 1947
Parcel 1 and 1A
$5,000.00
June 9, 1948
Parcel 2
1,500.00
June 8, 1948
Parcel 3
1,250.00
October 26, 1948
Parcel 4
2,000.00
January 25, 1949
Parcel 5
9,500.00
The real estate involved herein is located near the business district of Knoxville, Tennessee. Rail facilities and public utilities are available *280 for commercial usage. Some of the property purchased by petitioner was rented to wholesalers (referred to in the trade as peddlers) on a daily basis. In addition, some transient peddlers used part of the property without paying any rent. To facilitate night sales by the peddlers, floodlights were erected on parcel No. 2 which served to illuminate several of the other parcels of land in question. The cost of such floodlights totalled only about $300. In August 1952, petitioner leased a 20-foot lot in parcel No. 2 to Oliver and Clyde Williams for one year at $20 per month with an option to the lessees to purchase the lot within the rental period for the sum of $1,750. During the period from about January 25, 1949 (when parcel No. 5 was acquired by petitioner) until January of 1950, petitioner negotiated with the Tennessee Valley Authority for a lease which contemplated as a part of the arrangement the erection of a garage building and parking facilities thereon. In January 1950, when the negotiations ended without an agreement being reached, petitioner had parcel No. 5 surveyed, and divided the frontage on Forest Avenue into 15 lots 20 feet wide and 100 feet deep. These 15 lots *281 were sold by petitioner during February and April 1950 in seven separate transactions. The following sales of real estate held for over six months were made by petitioner during the taxable years 1949 to 1952, inclusive: Parcel No. &
Date Sold
Description
Sale Price
7/12/49
Parcel 2, 20feet frontage
s/s Grand Ave.
$ 400.00
4/11/49
Parcel 1 & 1A two
20feet lots
2,000.00
7/20/49
Parcel 2, 20feet frontage
s/s Grand Ave.
800.00
7/ 8/49
Parcel 2, 40feet frontage
s/s Grand Ave.
1,600.00
8/ 9/49
Parcel 2, 1/2 int in 320feet
frontage s/s Grand Ave.
2,500.00
2/ 8/50
Parcel 5, Lot 9
2,500.00
2/28/50
Parcel 5, Lots 10 & 11
4,500.00
4/26/50
Parcel 5, Lots 2 thru 8
14,500.00
4/26/50
Parcel 5, Lot 1
2,500.00
4/26/50
Parcel 5, Lot 13
2,500.00
4/26/50
Parcel 5, Lot 12
1,950.00
4/26/50
Parcel 5, Lots 14 & 15
6,000.00
12/18/51
Parcel 5, 50feet x 100feet
s/s Grand Ave.
5,000.00
8/12/52
Parcel 2, 40feet frontage
s/s Grand Ave.
3,000.00
9/11/52
Parcel 5, 100feet x 100feet
s/s Grand Ave.
7,000.00
11/ 1/52
Parcel 2, 20feet frontage
s/s Grand Ave.
1,325.00
12/19/52
Parcel 2, 20feet frontage
s/s Grand Ave.
1,500.00
*282 On the date of purchase (September 1947), parcel No. 1 consisted of eleven 20-foot lots and parcel No. 1A consisted of fifteen 20-foot lots. Prior to 1949, petitioner sold four lots in parcels Nos. 1 and 1A and the property known as "Abe Zwick" in parcel No. 3. No signs were placed upon the property involved herein at any time indicating that petitioner either owned the property or that the lots were for sale. In December 1951, petitioner paid a commission to another real estate agent who had negotiated a sale of a lot in parcel No. 5 for the sum of $5,000 to White Stores, Inc. Petitioner did not solicit offers for the real estate in question and did not advertise the lots for sale. The lots in question are located in the area known as the Forest Avenue Market area, and are used principally in connection with the sale of fresh produce. It was generally known in the neighborhood among the produce vendors that petitioner R. M. Clayton owned the property. During part of the period 1949 to 1952, inclusive, petitioner was listed in the telephone book as a real estate broker. Petitioner's business letterhead prior to and during the taxable years stated petitioner's occupation to be *283 "Real Estate." In the income tax returns for the years in question, gross rental income was reported as follows: Year
Gross Rental Income
1949
$206.50
1950
None
1951
None
1952
80.00
In said income tax returns, gross income from the sale of Clayton's own lots, and gross commissions derived from his activities as a real estate broker, were reported as follows: Year
Gross Commissions
Gross Income
1949
* $ 6,104.55
1950
None
28,242.30
1951
$2,375.00
4,442.90
1952
500.00
10,729.55
Petitioners reported 50 per cent of the net profit on the sale of said lots as long-term capital gains. In determining the deficiencies herein, respondent treated the gain from the sale of the lots as ordinary income and included the full amount thereof in petitioners' gross income. The various parcels of unimproved land sold by petitioner R. M. Clayton during the taxable years in question were then held by him primarily for sale to customers in the ordinary course of *284 his business as a dealer in real estate. Opinion FISHER, Judge: Respondent determined that gains realized from the sale of certain unimproved lots during the years 1949 to 1952, inclusive, are taxable as ordinary income from the sale of property held primarily for sale to customers in the ordinary course of R. M. Clayton's trade or business, within the meaning of sections 117(a) and 117(j) of the Internal Revenue Code of 1939. Petitioners contend that the lots in question were capital assets held primarily as an income-producing "investment," and that the gain upon sale is taxable as long-term capital gain. The issue is essentially one of fact. D. L. Phillips, 24 T.C. 435. The burden is upon the petitioners to prove that the lots in question were not held primarily for sale to customers in the ordinary course of business. It is, of course, apparent that although petitioner has been a real estate broker since 1923, the nature and extent of his activities may place him in the additional role of dealer or investor or both. Nelson A. Farry, 13 T.C. 8 (1949); Walter R. Crabtree, 20 T.C. 841 (1953). We recognize that *285 if real estate is acquired for investment purposes, and retains its character as an investment, it is a capital asset, and gain from sale will receive capital gains treatment. Alice E. Cohn, 21 T.C. 90, 100 (1953). Petitioner seeks to apply this principle to the sales here in issue. He argues that in 1947 for the first time, he acquired parcels of unimproved land which he intended to develop and retain as an investment; that he was thereafter prompted to liquidate his investment only because he received lucrative offers for the land; and that the sales thereof were only a passive liquidation of a capital asset to his best advantage. We do not think that the record supports this contention. We find no evidence of action, plan or program to develop or use the property in a manner calculated to realize substantially on the income-producing potential of the property except for the unsuccessful negotiations with T.V.A. in relation to parcel No. 5. When these particular negotiations ceased, the activities of petitioner clearly indicated a readiness to sell lots from the parcel in question whenever a satisfactory price was *286 offered. Although petitioner argued on brief that the lots had a "high income potential" and would "secure for him and his family an income for the rest of life," his only material development expenditure appears to have been the sum of $300 for floodlights, while he, at the same time, displayed a clear willingness to sell whenever an advantageous opportunity presented itself. Of the five parcels purchased by petitioner, the character of parcels Nos. 3 and 4 are not in issue. On June 9, 1948, petitioner acquired parcel No. 2, measuring 400 feet on the south side of Grand Avenue by 96 feet deep. In July 1949, petitioner sold 80 feet of frontage on Grand Avenue and in August 1949, sold a one-half interest in the remaining 320 feet. In January 1949, petitioner acquired parcel No. 5, and a year later surveyed the land, and the portion facing Forest Avenue was resubdivided into 15 lots, which were sold in February and April 1950 in seven transactions. The promptness with which petitioner began the sale of properties appears to be inconsistent with his main contention that the property was acquired as an income-producing investment. Rollingwood Corporation v. Commissioner, 190 Fed. (2d) 263 *287 (C.A. 9, 1951); D. L. Phillips, supra. The fact that some of the lots were rented is not inconsistent with a purpose to hold the lots primarily for sale, particularly where, as here, the rental income received by petitioners during the years involved was so negligible and little if any effort or investment was made to realize upon the income-producing potential. Moreover, the fact that petitioner leased one lot in parcel No. 2 for $20 a month and gave the lessee an option to purchase it during the 12-month term of the lease indicates a willingness to sell in the ordinary course of business rather than to hold for investment purposes. Under the circumstances, we regard the temporary rental of some of the lots as a mere stopgap arrangement, which operated until the opportunity for sale developed. Compare Nelson A. Farry, supra, where most of the properties in the taxpayer's portfolio were rented for as long as 11 years before the sale. It should be added that the gross profit realized upon the sale of the lots during the years in question was $59,575, or nearly 200 times the gross rentals of $340.50 received in those years. Counsel for petitioners have *288 stressed the fact that the properties were not advertised for sale in the newspapers and that no "for sale" signs were placed on the properties. Since the prospective purchasers of the properties were located in the vicinity of the Forest Avenue Market area, and it was generally known in that area that R. M. Clayton owned the properties, it does not appear that an aggressive sales effort was necessary. J. Roland Brady, 25 T.C. - (Filed December 30, 1955). It is of some significance, moreover, that petitioner paid a real estate agent a commission for negotiating the sale of a vacant lot in parcel No. 5 to White Stores, Inc. for $5,000. It would hardly be expected that petitioner, who was himself an experienced real estate broker, would have paid a commission to another broker unless he actively desired to dispose of the property. In view of the foregoing discussion it is our view that petitioner has failed to meet the burden of proving that he held the properties for investment purposes, and that, on the contrary the record supports the view that his primary interest was in selling the lots to customers "whenever a profitable proposition might be presented" in the ordinary course *289 of his business. D. L. Phillips, supra. We stated the applicable principle in Curtis Co., 23 T.C. 740, 755 (1955), (on appeal, C.A. 3) as follows: "It [petitioner] attempts to explain the sales during the years in issue as unexpected, too profitable to refuse, and made for reasons of friendship, good will, or by condemnation. However, the essential fact seems to be that these properties were acquired for the purpose of resale whenever a satisfactory profit could be made. Petitioner may not have aggressively promoted the sale of these properties; but, nevertheless, the frequency and volume of its sales of undeveloped real estate and its substantial holdings of such properties convince us that these properties were held, not only for sale at some time in the future, but primarily for sale to its customers in the ordinary course of its business during each of the years here in issue. Petitioner was a dealer in undeveloped land, and gains derived from the sale of such property are taxable as ordinary income." Petitioners argue that the instant case is controlled, inter alia, by Frieda E. J. Farley, 7 T.C. 198 (1946); McGah v. Commissioner, 210 Fed. (2d) 769 *290 (C.A. 9, 1954) and Lobello v. Dunlap, 210 Fed. (2d) 465 (C.A. 5, 1954). We think that all of the above cases are distinguishable on the facts. In none of them do we find, as in the instant case, the continuity of purpose to sell real estate, extending over a period of years, whenever a profitable opportunity arose. In Frieda E. J. Farley, supra, the taxpayers had purchased platted property and for many years used it for growing stock and allied purposes in connection with their nursery business. Unlike the instant case, the taxpayers did not deal in real estate, but devoted their full time to the nursery business. After the city built streets through the property (which was neither desired nor requested by taxpayers) thereby decreasing its value for nursery purposes, but increasing it for residential purposes, taxpayers for the first time sold a number of lots, to that extent liquidating their investment advantageously. In McGah v. Commissioner, supra, the sales of defense housing units by the taxpayer were made involuntarily as a result of a bank's demand, and the petitioner retained and continued to rent one-third of the houses despite a *291 ready market for sale. In Lobello v. Dunlap, supra, the taxpayer had been prevented from constructing buildings because of difficulties in obtaining priorities for that portion of the property which was held to have been sold as a capital asset. On the portion of the same tract which was not sold, petitioner constructed retail business buildings and rented them continuously from the date of construction. The taxpayers liquidated that portion of the tract upon which they could not construct rental buildings. We think it is clear from the brief statement of the facts in the Farley, McGah, and Lobello cases, that none of the three is here applicable. In the light of all the facts and the record as a whole, we are convinced that petitioners have failed to overcome the presumption of correctness of respondent's determination that the vacant lots sold by petitioners in 1947 to 1952, inclusive, were acquired and held by them primarily for sale to customers in the ordinary course of business within the meaning of section 117(a). We add that it is our opinion that the affirmative evidence supports respondent's view. We hold, therefore, that the gain from the sale thereof should *292 be treated as ordinary income. Arthur E. Wood, 25 T.C. - (Filed December 14, 1955); D. L. Phillips, supra; Alice Cohn, supra; C. E. Mauldin, 16 T.C. 698 (1951). We come next to the question of allocation of cost basis to the lots carved out of parcel No. 5. Petitioners maintain that the proper allocation should be 90 per cent of the cost to lots facing Forest Avenue and 10 per cent to those facing Grand Avenue. Respondent determined and here contends that an equitable allocation would be 65 per cent of the cost to Forest Avenue lots and 35 per cent to Grand Avenue. Petitioner testified as his own expert. We think it apparent that his opinion evidence was rather that of a bargainer, and that his allocation of basis to the Forest Avenue lots was clearly excessive. A comparison of selling prices of lots on Forest Avenue with those on Grand Avenue bears some relation to the allocation of cost since it does not appear that anything occurred between the time of purchase and the time of sale which would materially alter the relative values of the frontages on the two streets. Such a comparison indicates that respondent's allocation of 65 per cent *293 of cost to Forest Avenue lots and 35 per cent to those facing Grand Avenue was quite fair to petitioners. Since respondent's determination in this respect appears to be reasonable, and is prima facie correct, and since we are not impressed with what little evidence there is to the contrary, we sustain respondent's allocation. Respondent determined penalties for 1950, 1951 and 1952 under section 294(d)(1)(A), Internal Revenue Code of 1939, for failure to file a declaration of estimated tax. Petitioners offered no evidence to show that the failure was due to reasonable cause and not wilful neglect. Respondent's determination is therefore sustained. Respondent also determined that petitioners are liable for additions to tax under section 294(d)(2) for substantial understatement of estimated tax for each of the years 1950 through 1952. Petitioners have not assigned error in the pleadings with respect to the imposition of 294(d)(2) penalties and have introduced no evidence in respect thereto. Respondent's determination must therefore be sustained. Decision will be entered for the respondent. Footnotes
*. In 1949, petitioner's gross commissions as a real estate broker and gross income resulting from the sale of his own lots were combined on his tax return.↩