Boyd Gudgel and Geraldine Gudgel v. Commissioner.
Gudgel v. Commissioner
Docket No. 61355.
United States Tax Court
T.C. Memo 1958-83; 1958 Tax Ct. Memo LEXIS 147; 17 T.C.M. (CCH) 414; T.C.M. (RIA) 58083; May 12, 1958
C. E. Lopez, Esq., Post Office Building, St. Matthews, Ky., for the petitioners. Arthur Clark, Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax, as follows: Additions to Tax
Sec.
Sec. 294
Sec. 294
Year
Tax
293(a)
(d)(1)(A)
(d)(2)
1951
$2,026.46
$101.32
$218.93
$145.99
1952
1,926.60
96.33
302.36
212.92
1953
3,342.80
167.14
456.77
318.11 By amended answer, respondent claims an increased deficiency in income tax for 1953 of $54.94 and increased additions to tax of $2.75 under section 293(a) and $3.30 under section 294(d)(2). The remaining issues are (1) whether subdivided real estate sold *148 by petitioners during the taxable years had been held by them primarily for sale to customers in the ordinary course of their trade or business, so that the gain on such sales constitutes ordinary income; (2) whether respondent properly determined additions to tax for negligence for each of 1951 through 1953; and (3) whether respondent properly determined additions to tax for failure to file declarations of estimated tax and for substantial underestimation of tax for each of 1951 through 1953. Findings of Fact Some facts are stipulated and are hereby found. Petitioners Boyd and Geraldine Gudgel, husband and wife, filed their joint Federal income tax returns for 1951 with the collector of internal revenue at Louisville, Kentucky, and for 1952 and 1953 with the district director of internal revenue at Louisville, Kentucky. In 1940, petitioners acquired 17 1/2 acres of real estate on Cane Run Road in Jefferson County, Kentucky, on which they built a house, a barn and a silo. They proceeded to operate their dairy farm on that property. They fenced the remainder of the land and used it for pasture. In 1943, they acquired 19 1/2 adjoining acres of land which they fenced in for use *149 for pasture and hay. In 1944, the county extended Ralph Avenue through petitioners' property. In 1945, petitioners purchased an additional 14.7 acres adjoining the land previously acquired by them. As of December 31, 1948, their investment in undeveloped land totaled $11,194.35. They leased additional adjoining land for additional grazing and hay production. In 1948 or 1949, petitioners received an offer to purchase some of their land for the purpose of constructing a house. In 1949, they subdivided and sold, pursuant to that offer, 5 lots abutting on the south side of Ralph Avenue for $3,000. In August 1949, petitioners placed an advertisement in a Louisville newspaper offering lots for sale. They also placed about one dozen signs along the fence line of their property bearing the inscription "LOTS." Petitioners sold 3 additional lots in 1949, all abutting on the south side of Ralph Avenue. In 1950, petitioners sold 5 lots abutting on the north side and 1 lot abutting on the south side of Ralph Avenue. In 1950, petitioners constructed Likens Avenue into the portion of their land south of Ralph Avenue at a cost of $1,040.32, dedicated the roadway to public use, and had the *150 abutting land surveyed and subdivided into residential building lots. They sold 2 of these lots in 1950. In 1950, they acquired a tract of land located about 1,200 feet from their subdivided property on which they constructed a small shopping center. In 1951, petitioners sold 13 lots on Likens Avenue and 1 lot on the north side of Ralph Avenue. In 1952, petitioners constructed Gudgel Road into the portion of their property north of Ralph Avenue at a cost of $3,811.12, dedicated this roadway to the public use, and had the abutting land surveyed and subdivided into residential building lots. In 1952, petitioners sold 1 tract abutting on the south side of Ralph Avenue and 10 lots abutting on Gudgel Road. In 1952, the Illinois Central Railway Company approached petitioners and negotiated the purchase of 5.72 acres of land for use as a right-of-way. In 1953, petitioners constructed Boyd Drive into the portion of their property north of Ralph Avenue and east of the Illinois Central right-of-way at a cost of $2,776.30, dedicated this roadway to the public use, and had the abutting land surveyed and subdivided into residential building lots. They sold 17 lots abutting on Gudgel Road, *151 4 lots abutting on Boyd Drive, and 2 lots on what later became Gerald Drive. From 1951 through 1953, petitioners sold a total of 48 lots at an aggregate price of $51,975, 28 of which they sold on a deferred payment basis. Although they accomplished most sales themselves, on one occasion when the lots were not selling well petitioners listed them with a real estate agent. Neither petitioner ever held a real estate license. Petitioners reported the following gross income on their income tax returns for 1951 through 1953: Source of Income
1951
1952
1953
Milk sales
$10,404.40
$ 9,104.90
$ 4,581.06
Other farm sales
1,865.44
277.00
333.45
Total farm income
$12,269.84
$ 9,381.90
$ 4,914.51
Rent income
8,458.98
9,607.50
11,407.84
Interest, dividends and other income
63.10
199.98
349.64
Capital gains
2,555.39
10,135.19
9,021.20
Total gross income reported
$23,347.31
$29,324.57
$25,693.19
2/3 of gross income reported
$15,564.87
$19,549.71
$17,128.79 Petitioners' gross income as reported but reduced by costs of milk purchased was as follows: Source of Income
1951
1952
1953
Total farm income
$12,269.84
$ 9,381.90
$ 4,914.51
Less milk purchased
8,001.13
7,141.18
3,329.13
Net farm income
$ 4,268.71
$ 2,240.72
$ 1,585.38
Total nonfarm income
11,077.47
19,942.67
20,778.68
Gross income less milk purchased
$15,346.18
$22,183.39
$22,364.06
2/3 of gross income less milk purchased
$10,230.79
$14,788.92
$14,909.36
*152 Respondent reconstructed petitioners' net income for 1951 through 1953 by the net worth plus nondeductible personal expenditures method. Petitioners' increases in net worth plus nondeductible personal expenditures for 1951 through 1953 are as follows: Dec. 31, 1950
Dec. 31, 1951
Dec. 31, 1952
Dec. 31, 1953
Total assets
$92,448.67
$103,810.92
$114,009.80
$131,376.59
Total liabilities
43,315.22
44,277.34
41,477.96
42,488.47
Net worth
$49,133.45
$ 59,533.58
$ 72,531.84
$ 88,888.12
Net worth - prior year
49,133.45
59,533.58
72,531.84
Increase in net worth
$ 10,400.13
$ 12,998.26
$ 16,356.28
Nondeductible personal expenditures
3,670.79
7,644.00
5,624.09
Nontaxable portion of capital gains
(7,933.28)
(41.49)
Adjusted gross income
$ 14,070.92
$ 12,708.98
$ 21,938.88
Standard deduction
1,000.00
1,000.00
1,000.00
Net income adjusted
$ 13,070.92
$ 11,708.98
$ 20,938.88
Petitioners held the subdivided real estate sold by them in 1951, 1952 and 1953 primarily for sale to customers in the ordinary course of their trade or business. Petitioners' failure to file declarations of estimated tax was not due *153 to reasonable cause. The deficiencies in income tax for each taxable year are due in whole or in part to negligence. Opinion Although petitioners accept respondent's reconstruction of their income by the net worth plus nondeductible expenditures method, they claim that the taxable income so determined should be substantially reduced because much of that income resulted from gains on sales of capital assets. The sales involved were of lots carved out of petitioners' farm which, respondent contends, had been held by petitioners primarily for sale to customers in the ordinary course of their business, and thus are not capital assets under section 117(a)(1), I.R.C. 1939. [1]
This question, frequently litigated, is essentially factual, D. L. Phillips, 24 T.C. 435, but certain recognized standards *154 guide our evaluation of the facts. Those guides include the purpose or reason for acquisition; purpose or reason for disposal; extent of sales or sales-related activity; number, frequency, and continuity of sales; and character of promotional activities such as development, improvement, solicitation and advertising. Home Co. v. Commissioner, (C.A. 10) 212 Fed. (2d) 637, affirming a Memorandum Opinion of this Court [12 TCM 741]; Mauldin v. Commissioner, (C.A. 10) 195 Fed. (2d) 714, affirming 16 T.C. 698. No one test is controlling and all are not equally applicable in each factual situation. Petitioners acquired the land for purposes of farming and they contend that the sales were made to liquidate farm property when it became unproductive. But it is equally clear that with respect to the part sold, the farming purpose had been supplanted by that of selling. The problem is whether the land was sold in such a manner as to constitute a business. Their contention that the construction of a county road and a railroad right-of-way through their property required liquidation is neither determinative nor supported by the evidence. *155 The road was constructed at least 5 years prior to the first sales in 1949, and even prior to the acquisition by petitioners of part of the land being liquidated. The entire transaction with the railroad occurred in 1952, well after the commencement of substantial sales of lots. However, even if a liquidation had been forced, petitioners did not passively liquidate their property so as to entitle them to capital gains treatment. Cf. Frieda E. J. Farley, 7 T.C. 198; South Texas Properties Co., 16 T.C. 1003. Petitioners' activities feature a continuous subdivision of property as the volume of sales appeared to demand. Their activities formed a pattern of road dedication and construction, land surveying, platting and sales of lots. After substantial liquidation of lots facing a road, the pattern would be repeated elsewhere on their property. In addition to this extensive and continuous activity, petitioners placed signs on their property, advertised once in a newspaper, acquired nearby land where they constructed a shopping center, employed a real estate agent when their own sales efforts lagged, and undertook to sell many lots on a deferred payment basis. *156 Such substantial activities indicate pursuit of a business of developing and selling lots. Although the total number of sales involved may be comparatively small, the number of sales alone is not conclusive. See White v. Commissioner, (C.A. 5) 172 Fed. (2d) 629, 630 affirming a Memorandum Opinion of this Court [6 TCM 1038]. The amounts expended for building roadways alone bulk large when contrasted with the original investment in the land, and the agreed profits from these real estate sales comprise a large portion of petitioners' entire reconstructed income for these years. The cases petitioners cite employ similar guides in evaluating the facts. Each can be distinguished from a study of its peculiar facts. As in those cases, we have evaluated the facts after applying the appropriate legal standards. We conclude that petitioners' exploitation of their property constituted a business of improving and selling subdivided real estate and that the property thus sold was held for sale to customers in the ordinary course of that business and we have so found. Respondent determined an addition to tax for negligence under section 293(a), I.R.C. 1939. Petitioners *157 have the burden of proving this determination erroneous just as they must prove the determination of the deficiency in tax erroneous. David Courtney, 28 T.C. 658; J.T.S. Brown's Son Co., 10 T.C. 840. As they have produced no evidence relative to this issue, we must approve respondent's determination. Respondent determined additions to tax for failure to file declarations of estimated tax under section 294(d)(1)(A), I.R.C. 1939. Petitioners contend they were not required to file declarations because they qualified under section 60(a), I.R.C. 1939, [2] which allows persons whose income from farming constitutes two-third of their gross income to omit filing current declarations. Petitioners, however, fail to qualify for this treatment. Their income from rents, interest and dividends alone was in each year more than one-third of their reported gross income. They had other nonfarm income as well consisting of the gains from the sale of lots which was substantial whether treated as capital gain or ordinary income. In addition, they have reported proceeds of all milk sales as farm income, although in each year they purchased about 75 per cent of the milk sold. *158 Elimination from the proceeds of milk sales of the amount purchased reduces petitioners' claimed farm income to a small fraction of the two-thirds of gross income prescribed by section 60(a). Petitioners clearly should have filed a declaration of estimated tax as required by section 58(a), I.R.C. 1939. [3] They produced no evidence that their failure to file was due to reasonable cause, and we approve the additions to tax as determined. Rene Bouche, 18 T.C. 144; G. E. Fuller, 20 T.C. 308, affd. (C.A. 10) 213 Fed. (2d) 102. *159 Respondent also determined additions to tax under section 294(d)(2), I.R.C. 1939, for substantial underestimation of tax. Reasonable cause is no defense to this addition, and where no declaration was filed, we have consistently held that the estimate must be held to have been zero. H. R. Smith, 20 T.C. 663. Petitioners offer no defense and we approve this addition also. To take account of an issue disposed of by agreement of the parties, Decision will be entered under Rule 50. Footnotes
1. "SEC. 117. CAPITAL GAINS AND LOSSES. "(a) Definitions. - As used in this chapter - "(1) Capital Assets. - The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include - "(A) * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business:"↩
2. "SEC. 60. SPECIAL RULES FOR APPLICATION OF SECTIONS 58 AND 59. "(a) Farmers. - In the case of an individual whose estimated gross income from farming for the taxable year is at least two-thirds of the total estimated gross income from all sources for the taxable year * * * the declaration * * * may be made * * * on or before January 15 of the succeeding taxable year: and if such an individual files a return on or before January 31 of the succeeding taxable year, and pays in full the amount computed on the return as payable, such return shall have the same effect as that prescribed in section 58(d)(3)↩ in the case of a return filed on or before January 15." 3. "SEC. 58. DECLARATION OF ESTIMATED TAX BY INDIVIDUALS. "(a) Requirement of Declaration. - Every individual * * * shall, at the time prescribed in subsection (d), make a declaration of his estimated tax for the taxable year if - "* * * "(2) his gross income from sources other than wages * * * can reasonably be expected to exceed $100 for the taxable year and his gross income to be $600 or more."↩